Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in a Pre-Trial Order as:
 STIPULATIONS
1. At the time of the alleged contracting of and disability resulting from the alleged occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act and the employer-employee relationship existed between plaintiff and defendant.
2. Defendant is self-insured. At the time in question in this case, Kemper was the risk manager.
3. Plaintiffs average weekly wage may be determined by the Commission from an accurate wage chart prepared by defendant.
4. Commission Form 18, marked as Plaintiffs Exhibit 1, is admitted into evidence as a document filed with the Commission on the date reflected by the date stamp shown on the copy contained in the Commissions file. This form is admitted into evidence for the purpose of showing it was filed with the Commission and not as evidence of the matters stated therein.
5. Plaintiffs average weekly wage was $902.54.
 * * * * * * * * * * *
The Full Commission affirms the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff began working for defendant in 1973. Plaintiff has worked primarily in the DTFY section of DuPonts spinning process. He worked for approximately eight years on the first floor as a DTFY spinning operator, and then moved to the second floor where he worked as a DTFY operator until 1992. Defendants workers and supervisors confirmed that these jobs required the employee to squat or crouch approximately 32 times per shift, or every fifteen minutes, and to hold that position for between 30 and 60 seconds.
2. Plaintiffs history of knee problems consists of a sprained medial collateral ligament of his right knee in 1976 and a 1982 surgery on his left knee as a result of an automobile accident.
3. In January 1992, plaintiff felt a pop and pain in his right knee while he was doing his job on the second floor in DTFY in the usual way. He stated specifically, "I didnt do anything different than I always have done in the years that I have spent up there on second floor in spinning. He could not recall whether there had been any changes in his job at the time this happened.
4. Plaintiff continued to work the remainder of his shift and returned to work the next evening. Following that shift, he missed some days of work due to a family illness. Four days after plaintiff contends he was injured, he reported the occurrence to his supervisor, Mr. Durham Lee. This was the first time he made any report to any DuPont representative of his alleged injury. Plaintiff reported that there was no unusual activity causing the sensation. Mr. Moye told Mr. Lee that he had no pain and that the he had been able to work the next day following his alleged injury.
5. On 30 January 1992, Plaintiff was examined by Dr. James Bowman. Dr. Bowman noted normal degenerative joint disease and diagnosed plaintiff with a cartilage tear. Dr. Bowman re-examined plaintiff on 3 February 1992, and concluded that he had a torn medial meniscus of the right knee and osteoarthritis. Dr. Bowman performed surgery on plaintiffs right knee on 5 February 1992. Plaintiff was written out of work from 30 January through 2 March 1992. Thereafter, plaintiff did not feel he could do the second floor job in DTFY.
6. By 28 May 1992, plaintiff was not experiencing any knee problems. Dr. Bowman determined that plaintiff had reached maximum medical improvement and discharged him with a 5% permanent partial disability to his right leg. In June 1992, plaintiff was transferred to warehousing, where he drove a forklift.
7. Plaintiff returned to the DTFY operator job on the first floor in September 1992. He was able to doff, including stringing up a machine, from a standing position. After about three months, plaintiff was promoted to KSP as a CPO operator where he worked for over two years. At the time of the hearing before the Deputy Commissioner, plaintiff had left defendants place of employment and was studying to become an electrician.
8. Plaintiff was examined and evaluated by Dr. George Edwards on 1 April 1996. Dr. Edwards found plaintiff had a full range of motion in his right knee with excellent stability and no swelling. He agreed with Dr. Bowman that plaintiff had reached maximum medical improvement, but rated plaintiff as having a 15% permanent partial disability in his right leg.
9. Dr. Edwards stated that it was his opinion that plaintiffs right knee meniscus tear was caused by prolonged squatting and twisting at work. He further stated that the spinning machine operator job placed plaintiff at an increased risk over that of the general public for developing a torn posterior medial meniscus. Dr. Edwards defined prolonged squatting as maintaining a full squat position for at least ten minutes at a time, and he based his understanding of plaintiffs job on videotapes showing workers while they were primarily engaged in squatting tasks. Plaintiff did not tell Dr. Edwards how long he was required to squat on the job, nor did Dr. Edwards go to the DuPont plant or have the benefit of watching the plaintiffs jobs performed in their entirety. Further, Dr. Edwards testified that he had not compared the amount of squatting required of the plaintiffs jobs and the amount of squatting required of members of the general working population.
10. Dr. Maxwell R. Kasselt visited defendants plant and observed persons performing the jobs held by plaintiff. He also reviewed plaintiffs medical records. Dr. Kasselt stated that, in general, the doffers position did not place an employee at a greater risk of developing knee problems than that faced by the general working public. He noted that squatting is a basic movement which is performed in everyday life, and he testified that plaintiffs job did not place him at a greater risk than the general public of developing knee problems. Given plaintiffs pre-existing condition, plaintiff would have developed the same problems regardless of his employment.
11. Nancy Stewart, a rehabilitation counselor and vocational expert, spent approximately 12 hours on the plant site, interviewing workers and section leaders and reviewing job descriptions. Ms. Stewart analyzed plaintiffs jobs based on her observations, interviews, and reference to sources including the Dictionary of Occupational Titles, the Handbook for Analyzing Jobs and the Classification of Jobs. In the first floor DTFY job, she observed frequent stooping, defined as "bending at the waist to reach downward and forward, occasional kneeling, and occasional crouching, defined as "bending the legs and knees to work at a low position close to the floor. In the second floor DTFY job, she found kneeling and stooping to be occasional, and crouching to be negligible. With the exception of the frequent stooping requirement in the first floor jobs, Ms. Stewart found that the movements required by plaintiffs jobs were within the range of the majority category of jobs in the general population.
12. The greater weight of the evidence shows that plaintiffs job did not place him at an increased risk of developing his knee condition as compared to the risk faced by the general working population.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiffs knee condition did not result from an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. 97-2(6).
2. Plaintiff did not sustain an occupational disease as defined by the Act. G.S. 97-53(13); Rutledge v. TultexCo., 308 N.C. 85, 301 S.E.2d 359 (1983).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiffs claim is DENIED.
2. Each side shall bear its own costs.
This the ___ day of April 2000.
 S/ ______________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ THOMAS J. BOLCH COMMISSIONER